UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH LEE C.

        Plaintiff,

   -v-                                 8:20-CV-190

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

CONBOY, MCKAY LAW FIRM          LAWRENCE D. HASSELER, ESQ.
Attorneys for Plaintiff
307 State Street
Carthage, NY 13619

SOCIAL SECURITY ADMINISTRATION    LISA SMOLLER, ESQ.
Attorneys for Defendant              Special Ass't United States Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On February 20, 2020, plaintiff Kenneth Lee C.[1] ("plaintiff" or "claimant") filed this

action seeking review of defendant Commissioner of Social Security's ("Commissioner" or

"defendant") final decision denying his application for Disability Insurance Benefits

---

[1]  In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be used in this opinion.

("DIB").  Defendant has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides, *inter alia*, that a claimant's appeal from a final decision denying benefits will be treated as if the parties have included in their briefing cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. BACKGROUND

On December 9, 2016, plaintiff, a medically retired corrections officer, filed an application for DIB alleging that herniated discs in his spine and neck and back problems rendered him disabled beginning on August 31, 2013.  R. at 190, 213.[2]  Plaintiff later amended his alleged disability onset date to February 11, 2017.[3]  *Id*. at 260.

Plaintiff's claim was initially denied on February 9, 2017.  R. at 116-21.  At his request, a video hearing was held before Administrative Law Judge ("ALJ") David Romeo on December 7, 2018.  *Id*. at 45-78.  The ALJ presided over the hearing by video from Syracuse, New York.  *Id*.  Plaintiff, represented by attorney Molly Clupp, appeared and testified from the Social Security field office in Ogdensburg, New York.  *Id*.  The ALJ also heard testimony from Vocational Expert ("VE") Linda Voss.  *Id*.

Thereafter, the ALJ issued a written decision denying plaintiff's application for benefits from February 11, 2017, the amended alleged onset date, through December 27, 2018, the date of his written decision.  R. at 30-39.  This decision became the final decision of the

---

[2]  Citations to "R." refer to the Administrative Record.  Dkt. No. 6.

[3]  Plaintiff had previously applied for DIB in June 2013 alleging disability as of September 13, 2012.  R. at 82.  Plaintiff was found not disabled by an ALJ on June 4, 2015, but did not appeal that finding.  *Id.*

Commissioner on January 23, 2020, when the Appeals Council denied plaintiff's request for review.  *Id*. at 1-7.

## III.  DISCUSSION

### A.  Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied.  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  *See Williams*, 859 F.2d at 258*.*  Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the

ultimate conclusion reached is arguably supported by substantial evidence.  *Martone v.*

*Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986

(2d Cir. 1987)).

### B.  Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires

that a claimant's:

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is

disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ must determine

whether the claimant has engaged in substantial gainful activity.  A claimant engaged in

substantial gainful activity is not disabled, and is therefore not entitled to

benefits.  *Id*. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires

the ALJ to determine whether the claimant has a severe impairment or combination of

impairments which significantly restricts his physical or mental ability to perform basic work

activities.  *Id*. §§ 404.1520(c)), 416.920(c)).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d); *see also id.* Pt. 404, Subpt. P, App. 1.  If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The burden of proof with regard to these first four steps is on the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five.  *Perez*, 77 F.3d at 46.  This step requires the ALJ to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs:  very heavy, heavy, medium, light, and sedentary.  *Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity."  *Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. **ALJ's Decision**

The ALJ applied the five-step disability determination to find that:  (1) plaintiff had not engaged in substantial gainful activity since February 11, 2017, the amended alleged onset date; (2) plaintiff's cervical spine disorder, lumbar spine disorder, bilateral carpal tunnel disorder, and left should were severe impairments within the meaning of the Regulations; (3) plaintiff's hypercholesterolemia, gout, insomnia, low testosterone, and obesity were not severe impairments; and (4) plaintiff's severe impairments, whether considered individually or in combination, did not meet or equal any of the Listings.  R. at 32-33.

At step four, the ALJ determined that plaintiff retained the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except occasional overhead reaching and no overhead lifting with either upper extremity.  Frequent reach, handle, finger and feel with both upper extremities.  Would need an option to alternate to sitting for 5 minutes after every 40 minutes of standing or walking.  Can remain on task while sitting.  Occasional operation of foot controls. Never climb ropes, ladders or scaffolds.  Frequently turning of the head to the right or the left.  Never exposed to high, exposed places or moving mechanical parts.

R. at 33.

The ALJ found that this RFC precluded plaintiff from performing his past relevant work as a corrections officer.  R. at 37.  However, the ALJ relied on the VE's testimony to conclude that plaintiff could still perform such representative jobs as "identification clerk," "security guard," "marker," and "office helper."  *Id*. at 38.  Because these jobs existed in sufficient numbers in the national economy for someone of plaintiff's age, education, work experience, and RFC, the ALJ concluded that plaintiff was not disabled during the relevant time period. *Id*. at 38-39.  Accordingly, the ALJ denied plaintiff's application for benefits.  *Id*. at 39.

### D. Plaintiff's Appeal

Plaintiff makes two arguments on appeal:  (1) the ALJ should have found him disabled under Listing 1.04; and (2) the RFC determination is unsupported by substantial evidence because it failed to include a sufficiently restrictive limitation on plaintiff's ability to turn his neck bilaterally.  Pl.'s Mem., Dkt. No. 7, 19-24.[4]

### 1. Step Three

At step three, the ALJ considered whether plaintiff met Listing 1.02, which deals with a "major dysfunction of a joint," Listing 1.04, which deals with "disorders of the spine," and Listing 11.14, which deals with "peripheral neuropathy."  R. at 33.  The ALJ concluded that plaintiff's impairments did not meet or equally any of these three listings because the record "does not document an inability [to] perform fine and gross movements effectively."  *Id*.  The ALJ also found that "physical examinations do not consistently show evidence of decreased range of motion, motor weakness, sensory deficits, and positive straight leg raise test."  *Id*.

Plaintiff contends that the ALJ erred at step three because the medical evidence in his case met Listing 1.04.  Pl.'s Mem. at 22.  Listing 1.04 states that:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

---

[4]  Pagination corresponds to CM/ECF.

or

B.     Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C.     Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

As plaintiff explains, "[t]here is no question that [he] has been diagnosed with lumbar spine disorder including a herniated disc with nerve root compression." Pl.'s Mem. at 22. According to plaintiff, the ALJ failed to incorporate findings from Juan-Diego Harris, M.D., his pain management specialist, that show "objective and subjective evidence of pain associated with the specific nerve root compression, decreased range of motion, and sensory deficits." *Id*.

Plaintiff further argues that an Independent Medical Examination conducted by William D. Ferraraccio, M.D., an orthopedic surgeon, documents other objective findings that qualify under Listing 1.04. Pl.'s Mem. at 22. Plaintiff contends the ALJ ignored all of this evidence in favor of a single record from 2012 that "does not actually negate any of the numerous other records." *Id*. at 23.

Upon review, plaintiff's step three argument must be rejected. "The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability." *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir.

1998) (citation omitted); *see also Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995) (holding that a plaintiff who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits").  However, "[i]n order for a condition to be considered disabling *per se* under step three, it must satisfy each element set out in the definition of a listed impairment."  *Bolden v. Comm'r of Soc. Sec.*, 556 F. Supp. 2d 152, 162 (E.D.N.Y. 2007).

Plaintiff has cited to some medical evidence in the record showing that he met several of the criteria in Listing 1.04 on several different occasions.  As the Commissioner points out, the majority of these records come from the period before plaintiff's alleged onset date.  Def.'s Opp'n, Dkt. No. 11 at 10.  "Of course, evidence from before or after the relevant time period often provides necessary context for a disability claim and, if so, an ALJ cannot simply ignore it."  *Cheri Lee H. v. Comm'r of Soc. Sec.*, 2020 WL 109007, at *5 (N.D.N.Y. Jan. 9, 2020).  In other words, "the mere absence of contemporaneous medical evidence of a disabling condition during the relevant time period does not necessarily preclude a finding of disability."  *Norman v. Astrue*, 912 F. Supp. 2d 33, 82 n.74 (S.D.N.Y. 2012).

But the problem with plaintiff's step three argument is not the age of his medical evidence.  Instead, the shortcoming in plaintiff's claim of error is that he has not identified evidence that would amount to the requisite showing.  First, plaintiff he has not demonstrated evidence of "motor loss" or evidence that his straight-leg raising was "positive" in both the sitting *and* supine positions.  Def.'s Opp'n at 10-11.  Findings of these signs and symptoms are some of the *other* criteria necessary to make a finding of disability under Listing 1.04(A). The burden is on plaintiff to show that he meets all of the criteria of a Listing, not just some of them.  *See, e.g.*, *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (Mordue,

J., adopting Report & Recommendation of Bianchini, M.J.) ("If a claimant's impairment manifests only some of those criteria, no matter how severely, such impairment does not qualify." (cleaned up).  Second, and relatedly, plaintiff has not shown that the signs and symptoms on which he relies were present for a continuous twelve-month period.  *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 397 (S.D.N.Y. 2019) ("[I]t is not enough to show that one of these [specified] criteria existed on a single occasion or for a brief period.").  In short, the ALJ did not err at step three.

### 2. Step Four

At step four, the ALJ found that plaintiff retained the RFC to perform "light work" with a series of additional limitations.  R. at 33.  As relevant here, the ALJ found that plaintiff could "frequently" turn his head to the right or left.  *Id*.  Plaintiff argues that this finding was reversible error because the record "is replete with documentation from several doctors assessing that Plaintiff would only be able to move his neck bilaterally occasionally, rather than frequently as the ALJ has ruled."  Pl.'s Mem. at 20.  According to plaintiff, medical evidence from pain specialist Dr. Harris, Richard J. Mutty, M.D., an orthopedic surgeon, and consultative examiner Elke Lorensen, M.D., all demonstrate that plaintiff suffered from decreased range of motion in his neck.  *Id*. at 21.

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'"  *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue,* 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).  "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id*. (quoting *Adams v. Colvin*, 2016 WL 3566859, at *3 (N.D.N.Y. June 24, 2016)).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 640 (S.D.N.Y. 2019) (citations omitted). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192-93 (citation omitted).

The ALJ conducted a thorough analysis of plaintiff's medical history before reaching a conclusion about plaintiff's ability to turn his neck. The ALJ found plaintiff has a history of neck pain going back to a work-related injury from 2000. R. at 35. The ALJ further found that a neck surgery alleviated those symptoms, but that plaintiff later developed a new onset of back pain after a second work-related injury in 2001. *Id*. The ALJ noted that plaintiff underwent a second surgery in 2004. *Id*. The ALJ also noted that although this second surgery seemed to alleviate the symptoms once again, the medical evidence showed that plaintiff re-developed neck pain as well as lower back and left shoulder pain over a period of years. *Id*. at 35-36.

Plaintiff argues that these conditions have not only disabled him from his previous work as a corrections officer but also rendered him unable to perform work at any exertional level. Plaintiff's argument about a neck-related limitation relies on the ALJ's characterization of a few particular pieces of the medical record. On February 2, 2017, Dr. Lorensen, a

general vascular surgeon, performed a consultative examination.  R. at 520-24.  Among

other things, Dr. Lorensen concluded that plaintiff has "moderate to marked limitations for

turning the head."  *Id*. at 524.

The ALJ gave "some weight" to Dr. Lorensen's medical opinion, but refused to "fully

adopt[ ]" what he characterized as a "neck restriction."  R. at 34.  According to the ALJ, Dr.

Lorensen's conclusion was not fully supported by the medical record, "which show[ed] some

reduced range of motion of the neck, but full extension, rotation, side bending, and muscle

strength."  *Id*.  In reaching this conclusion, the ALJ also noted that plaintiff "benefitted from

conservative treatment modalities."  *Id*.  Thus, in the ALJ's view, limiting plaintiff to "frequent

turning of the head" fully accounted for any limitation based on plaintiff's neck pain.  *Id*.

The ALJ partially discounted certain restrictions assessed by Dr. Harris, plaintiff's pain

management specialist, and by Stacey Graves, M.S., OTR/L, an occupational therapist.  R.

at 34 (discussing R. at 616-50, 653-58).  For instance, although Dr. Harris indicated that

plaintiff had fairly severe neck pain, his motor strength was "5/5" in both of upper

extremities.  *Id*. at 492.

Upon review, there is no reversible error in the ALJ's RFC finding.  As an initial matter,

"there is no requirement that the ALJ pick one RFC and use that particular evaluation in its

entirety."  *Alexandrea R.R. v. Berryhill*, 2019 WL 2269854, at *6 (N.D.N.Y. May 28, 2019)

(cleaned up).  Rather, "it is the ALJ's responsibility to choose between properly submitted

medical opinions and other competent evidence to piece together an overall [RFC]

assessment."  *Id*.

Plaintiff has marshaled evidence from the record in support of his position that the ALJ

should have assessed a more restrictive limitation in his ability to turn his neck from side to

side.  Pl.'s Mem. at 20-21 (referencing medical records showing decreased range of motion).  But the Commissioner has also identified evidence in support of the ALJ's less restrictive conclusion.  For instance, defendant correctly points out that medical evidence following his neck surgeries generally showed improvement in his neck pain.  Def.'s Opp'n at 6.  Defendant also correctly points out that there is evidence elsewhere in the record that tends to undermine a more restrictive finding of neck-related limitations.  *Id*. at 8 (citing records from throughout 2018); R. at 36-37 (citing records from between 2015 and 2018).

The ALJ discharged his duty to resolve the conflicting information in the medical record by making a specific finding about how often plaintiff would be able to turn his neck in both directions.  Plaintiff has offered evidence tending to show that he should be limited to moving his neck from side to side only "occasionally."  However, the ALJ identified evidence tending to show that plaintiff was not quite so restricted.  R. at 35-37.

Plaintiff's disagreement with the factual determination that the ALJ drew from this record evidence is not a basis for remand.  "The substantial evidence standard means that once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to concluded otherwise*."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original).  In other words, a claimant must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record."  *Z.J.F. ex rel. Conkling v. Comm'r of Soc. Sec.*, 2018 WL 1115516, at *6 (N.D.N.Y. Fe. 27, 2018) (Carter, M.J.).  Plaintiff has not done so.  Accordingly, the ALJ did not err at step four.

## IV.  CONCLUSION

The ALJ applied the appropriate legal standards and supported his written decision

with substantial evidence in the record.

Therefore, it is

ORDERED that

1. Plaintiff's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated:  November 30, 2020
        Utica, New York.

United States District Judge